UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ROCKSTAR, INC., a Nevada corporation,   )
and RUSSELL G. WEINER, an individual,   )
                                        )        2:10-CV-00179-LRH-RJJ
            Plaintiffs,                 )
                                        )
 v.                                     )        ORDER
                                        )
RAP STAR 360 LLC, a Delaware limited    )
liability company, and ERIC BARRIER, an )
individual,                             )
                                        )
            Defendants.                 )
_____ )

Before the court is Plaintiffs Rockstar, Inc. and Russell G. Weiner's

(collectively "Plaintiffs") Motion for Default Judgment (#10[1]).  Defendant Rap Star 360 LLC has

not responded or otherwise appeared in this matter.

I.      **Facts and Procedural History**

This is a trademark and trade dress infringement dispute.  Weiner is the owner of several

U.S. Trademark Registrations for "ROCKSTAR" and other similar marks in connection with

energy drinks.  Since 2001, Weiner has licensed his trademarks to Rockstar, Inc.

Rockstar, Inc. is a producer and distributor of various energy drinks, including ROCKSTAR

ENERGY DRINK®.  Rockstar, Inc.'s products and promotional materials feature a star as a

[1]Refers to the court's docket entry number.

1  substitute for the "A" in "ROCKSTAR,"along with a black and gold trade dress.  Rockstar, Inc.

2  markets and promotes its products using the following Internet addresses: www.rockstar69.com

3  and www.rockstar69.net.

4          Defendant uses the mark "RAPSTAR 360" and trade name "RAP STAR 360" in connection

5  with its own energy drink which also features a star logo on its product and a black and gold trade

6  dress.  Defendant markets and promotes its product at the following Internet addresses:

7  www.rapstar360.com and www.rapstar360.net.

8          On February 9, 2010, Plaintiffs filed a complaint alleging the following causes of action:

9  (1) trademark infringement under section 32 of the Lanham Act, 15 U.S.C. §1114; (2) false

10 designation and description, trade dress infringement, and unfair competition in violation of section

11 41 of the Lanham Act, 15 U.S.C. §1125; and (3) common law unfair competition.[2]  On February

12 16, 2010, Plaintiffs served Harvard Business, Defendant's registered agent for service of process,

13 with the summons and complaint.  Defendant did not file a response before the March 9, 2010

14 deadline.

15         On March 22, 2010, Plaintiffs filed their Motion for Entry of Clerk's Default (#8), which

16 the Clerk of the Court subsequently entered (#9).  Thereafter, on May 5, 2010, Plaintiffs filed the

17 present motion for default judgment, seeking a permanent injunction barring Defendant's further

18 use of the "RAPSTAR 360" mark and trade dress.

19 **II.    Discussion**

20         Obtaining a default judgment is a two-step process governed by Federal Rule of Civil

21 Procedure 55.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  First, Rule 55(a) provides,

22 "When a party against whom a judgment for affirmative relief is sought has failed to plead or

23 otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

24

25         [2]Although Plaintiffs' Complaint (#1) contains causes of action for Nevada Statutory Deceptive Trade
Practices and Unjust Enrichment, Plaintiffs' Motion for Default Judgment (#10) does not address these claims.

26

party's default." Fed. R. Civ. P. 55(a).  Second, after the clerk enters default, a party must seek

entry of default judgment under Rule 55(b).

      Upon entry of default, the court takes the factual allegations in the non-defaulting party's

complaint as true.  Nonetheless, while entry of default by the clerk is a prerequisite to an entry of

default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a

matter of right."  *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004)

(citation omitted).  Instead, whether a court will grant a default judgment is in the court's

discretion.  *Id.*  (citations omitted).

**A. Default Judgment Factors**

      The Ninth Circuit has identified the following factors as relevant to the exercise of the

court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice

to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the

complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning

material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy

underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel*, 782 F.2d at

1471-72.  The court will consider these factors below.

**1. Prejudice**

      The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment

is not entered.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Considering Defendant's failure to respond or otherwise cooperate in this litigation, it is unlikely

that Defendant will cease use of the "RAPSTAR 360" mark in the absence of an entry of default

judgment.  Thus, the possibility of prejudice to Plaintiffs is high, and this factor weighs in favor of

default judgment.

\\\

\\\

3

**2. Merits of Plaintiffs' Substantive Claims**

The second and third *Eitel* factors favor default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8; *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978). Here, the court finds that Plaintiffs' factual allegations sufficiently state a claim for relief.

**a. Trademark Infringement**

To establish Defendant's liability for trademark infringement, Plaintiffs must demonstrate the following: (1) they are the owner of a valid, protectable mark; and (2) the alleged infringer is using a confusingly similar mark. *See Grocery Outlet v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (*citing* 15 U.S.C. § 1114(1); *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999)). Further, to determine the likelihood of confusion, the Ninth Circuit looks to the following eight non-exclusive factors: "strength of the mark; proximity of the goods; similarity of the marks; evidence of actual confusion; marketing channels used; types of goods and the degree of care likely to be exercised by the purchaser; defendant's intent in selecting the mark; and likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (citations omitted), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prod.*, 353 F.3d 792 (9th Cir.2003).

Weiner is the valid owner of U.S. Trademark Registrations for "ROCKSTAR." Plaintiffs allege that consumers will mistakenly assume that Defendant's energy drinks are associated or affiliated with Rockstar, Inc. The goods in question are identical, and the marks have similar meanings. Defendant's energy drinks are or will be sold in the same retail outlets as used by Plaintiffs. Finally, Defendant intentionally adopted its mark with the purpose of deceiving consumers. Thus, the court finds that Plaintiffs have stated a sufficient claim for trademark infringement.

\\\

4

**b. Trade Dress Infringement**

A three-part test is used to determine whether a trade dress is protected: "(1) whether the trade dress is inherently distinctive or has acquired distinctiveness through secondary meaning; (2) whether the trade dress is not functional; and (3) whether there is any likelihood of confusion between a party's trade dress and an alleged infringer's." *GMC v. Let's Make a Deal*, 223 F. Supp. 2d 1183, 1195 (D. Nev. 2002) (citation omitted).

Plaintiff alleges that Rockstar Inc.'s trade dress has acquired a secondary meaning in the minds of consumers, that the black and gold trade dress is nonfunctional, and that Defendant's black and gold packaging is confusingly similar to Rockstar Inc.'s trade dress. Accordingly, the court finds that Plaintiffs have stated a sufficient claim for trade dress infringement.

**3. Sum of Money at Stake**

Under the fourth *Eitel* factor, the court considers "the amount of money at stake in relation to the seriousness of Defendants' conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. Here, Plaintiffs seek an injunction, rather than monetary relief. The suitability of injunctive relief is discussed below.

**4. Possible Dispute**

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Upon entry of default, all factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citation omitted). Here, given the sufficiency of the complaint, no genuine dispute of material fact would preclude granting default judgment.

**5. Excusable Neglect**

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. A defendant's conduct is culpable, rather than excusable, if the defendant received actual or constructive notice of the filing of the action and failed to answer. *Meadows v. Dominican*

5

1  *Republic*, 817 F.2d 517, 521 (9th Cir. 1987).  Here, Defendant had both actual and constructive

2  notice of this litigation.  Plaintiffs properly served the summons and complaint on a registered

3  agent (#9).  Therefore, it does not appear that Defendant's default resulted from excusable neglect.

### 6. Decision on the Merits

5  The seventh *Eitel* factor considers that "[c]ases should be decided upon their merits

6  whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  However, the "mere existence of [Rule

7  55(b)] indicates that this 'preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F.

8  Supp. 2d at 1177 (citation omitted).  Moreover, Defendant's failure to answer Plaintiff's complaint

9  makes a decision on the merits impractical, if not impossible.  Thus, the court is not precluded from

10  entering a default judgment against Plaintiffs.

### B. Permanent Injunction

12  The Lanham Act "vests the district court with the power to grant injunctions according to

13  principles of equity and upon such terms as the court may deem reasonable, to prevent the violation

14  of any right of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th

15  Cir. 2006) (*citing* 15 U.S.C. § 1116).  Plaintiffs seek a permanent injunction prohibiting Defendant

16  from further use of: (1) the "RAPSTAR 360" trademark, (2) the Rap Star logo, (3) the Rap Star

17  trade dress, and (4) anything confusingly similar thereto.

18  To obtain the requested permanent injunction Plaintiffs must establish the following: (1)

19  actual success on the merits; (2) a likelihood of irreparable injury to the plaintiff if injunctive relief

20  is not granted; (3) a balance of hardships favoring the plaintiff; and (4) advancement of the public

21  interest. *See Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374, 381 (2008) (citation

22  omitted).

23  Here, an injunction is warranted because Plaintiffs have achieved "actual success on the

24  merits" through Defendant's default.  Further, Plaintiffs are likely to suffer irreparable injury

25  because, absent injunctive relief, Defendant's trademark infringement will continue.  Consumer

26

1   confusion and potential dissatisfaction with Defendant's drinks are likely to have a negative effect

2   on Plaintiffs' reputation and goodwill.  Accordingly, the court finds the lost opportunities and

3   diminished value of goodwill resulting from Defendant's continued unauthorized use of Plaintiffs'

4   marks is likely to cause Plaintiffs irreparable harm.  *See Rent-A-Center, Inc. v. Canyon Television*

5   *& Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citation omitted) ("[I]ntangible

6   injuries, such as damage to . . . goodwill, qualify as irreparable harm.")*; MySpace, Inc. v. Wallace*,

7   498 F.Supp.2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is

8   unquantifiable and considered irreparable.").

9          Likewise, the balance of harms and the public interest both weigh in Plaintiffs' favor.

10   Plaintiffs have expended substantial sums of money using and promoting their marks, and any

11   harm to Defendant in forcing it to comply with the requirements of the law merits little equitable

12   consideration.  In addition, the public interest lies in favor of upholding property interests in

13   trademarks and preventing customer confusion.  Because Plaintiffs have demonstrated a likelihood

14   of irreparable harm and that the balance of harms and the public interest weigh in their favor, the

15   court shall issue the requested permanent injunction as outlined below.

16   \\\

17   \\\

18   \\\

19   \\\

20   \\\

21   \\\

22   \\\

23   \\\

24   \\\

25   \\\

26

7

1    IT IS THEREFORE ORDERED that Plaintiffs' Motion for Default Judgment (#10) is

2 hereby GRANTED.

3    IT IS FURTHER ORDERED that Defendant, including its directors, officers, employees,

4 agents, contractors, customers, and others acting in concert with them, are hereby permanently

5 enjoined, prohibited, and otherwise restrained from the following:

6    (1) using the mark "RAPSTAR 360";

7    (2) using the Rap Star star logo;

8    (3) using the Rap Star black and gold trade dress; and

9    (4) using the domain names www.rapstar360.com and www.rapstar360.net.

10    IT IS SO ORDERED.

11    DATED this 6th day of July, 2010.

12

13

14    _____
      LARRY R. HICKS
15    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26                                        8